**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **HUYNH HUU NGUYEN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-2442-R** |
| | ) | |
| **WARDEN OF DIAMONDBACK CORRECTIONAL FACILITY, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Huynh Huu Nguyen, a noncitizen[1] and Vietnamese national proceeding with counsel,[2] filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition"), challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE"). Doc. 1. United States District Judge David L. Russell referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). The undersigned set an expedited briefing scheduled, Doc. 6, and the Petition is at issue. On September 10, 2026, Petitioner filed a Motion to Appoint Counsel. Doc. 2.

For the reasons below, the undersigned recommends that the Court grant the Petition and order Petitioner's release from ICE custody subject to an appropriate Order of

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2] Petitioner filed his Petition pro se, but counsel subsequently entered an appearance on his behalf, Doc. 10, after Respondents filed their Response.

Supervision ("OOS"). Petitioner's Motion to Appoint Counsel, Doc. 2, should be denied as moot.

**I. <u>Background and Procedural History</u>**

Petitioner, a citizen of Vietnam, entered the United States as a lawful permanent resident on or about July 16, 1981, in Cincinnati, Ohio. Pet. at 2; Resp. at 9; Doc. 8-2 at 3 (Notice to Appear). On June 5, 2003, he was convicted of Aggravated Assault with a Deadly Weapon in Tarrant County, Texas. Resp. at 9; Doc. 8-1 at ¶ 6 (Declaration of ICE Enforcement and Removal Operations ("ERO") Officer Juan Soto). On May 28, 2004, he was convicted of Theft in Dallas, Texas. Resp. at 9; Doc. 8-1 at ¶ 7. On October 27, 2005, he was convicted of Robbery in Tarrant County, Texas. Resp. at 9; Doc. 8-1 at ¶ 8. On April 14, 2006,[3] following these criminal convictions, ICE placed Petitioner into removal proceedings through the issuance of a Notice to Appear, charging him as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) as someone who has been convicted of an aggravated felony or crime of violence. Resp. at 9; Doc. 8-2 at 3. On March 15, 2007, an Immigration Judge ordered Petitioner removed from the United States to Vietnam. Pet. at 2; Resp. at 9-10; Doc. 8-3 at 1 (Removal Order).

On March 5, 2008, Petitioner was released from Texas state custody into ICE custody, and, on July 24, 2008, he was released on an OOS. Resp. at 10; Doc. 8-1 at ¶¶ 11, 13. Petitioner alleges on "information and belief" that ICE released him "because they could not get travel documents to remove [him] to Vietnam." Pet. at 2. On February 16,

---

[3] Petitioner was served the Notice to Appear on April 26, 2006. Doc. 8-2 at 2; Resp. at 9.

2011, Petitioner was convicted of Theft of a Vehicle in Tarrant County, Texas and sentenced to three years' confinement. Resp. at 10; Doc. 8-1 at ¶ 14. On January 8, 2014, it was determined Petitioner "was amenable to removal" and he was transferred into ICE custody the following day. Resp. at 10; Doc. 8-1 at ¶¶ 15-16. However, on February 25, 2014, he was again released on an OOS. Resp. at 10; Doc. 8-10 at 1 (Petitioner's 2014 OOS). Petitioner alleges he was released "because Vietnam denied [his] travel document again." Pet. at 2. On January 6, 2017, Petitioner was convicted of Driving While Intoxicated in Eastland County, Texas, but it does not appear he re-entered ICE custody at that time. Resp. at 10; Doc. 8-1 at ¶ 18.

On July 24, 2026, ERO encountered Petitioner during a targeted enforcement operation after he failed to report to ICE as instructed under the conditions of his OOS. Pet. at 2.; Resp. at 10; Doc. 8-1 at ¶ 19; Doc. 8-4 at 2 (ICE Encounter Summary).[4] He was brought to the Dallas ERO Field Office and served with the Notice of Revocation of Release, Warrant of Removal, and Notice of Custody Determination. Resp. at 10-11; Doc. 8-6 at 1 (Warrant of Removal/Deportation); Doc. 8-8 at 1 (Notice of Custody Determination); Doc. 8-9 at 1 (Notice of Revocation of Release). The Notice of Revocation of Release indicates Petitioner's release was revoked "pursuant to 8 C.F.R.

[4] Petitioner alleges he previously reported to ICE in person but that, because of the COVID-19 pandemic, he began electronically checking in by email. Doc. 9 at 2; Doc. 9-4 at 2-3; *see* Doc. 9-1 at 2 (Petitioner's electronic check-in email); Doc. 9-2 at 2 (Notice to report electronically during COVID-19 pandemic). However, he alleges, he eventually stopped receiving responses to his emails from ICE but failed to resume in-person reporting. Doc. 9 at 2; *see* Doc. 9-2 at 3-6 (Petitioner's emails to ICE).

§ 241.4(l)" because he "failed to report to ICE as instructed under the conditions of [his] release." Doc. 8-9 at 1. However, the Notice also indicates his release has been revoked "pursuant to 8 C.F.R. § 241.13(i)" because "circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future" and "ICE is seeking a travel document to effect [his] expeditious removal to Vietnam." Doc. 8-9 at 1-2. On July 24, 2026, he received an Informal Interview Upon Revocation of OSUP at which he provided a written statement. Resp. at 11; Doc. 8-5 at 1 (Informal Interview Documentation).[5]

On August 26, 2026, "a travel document request ("TDR") was submitted to ICE ERO Headquarters Removals and International Operations (HQ RIO) for submission to Vietnam." Doc. 8-1 at ¶ 21. As of September 24, 2026, ERO Officer Soto alleges "issuance of a travel document is pending." Neither party has provided an update on the TDR over the past three months.

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. Pet. at 3. Neither party has provided evidence that he is no longer detained there. *See also* Doc. 9 at 4 (confirming Diamondback Correctional Facility as detention location and mailing address for Petitioner on Reply filed on October 29, 2026).

[5] Petitioner's written statement is redacted in Respondents' exhibit. Doc. 8-5 at 1.

## II. Petitioner's Claims[6]

Petitioner raises six grounds for relief:

- **Count I: Violation of Substantive Due Process.** Petitioner alleges his continued detention "violates [his] substantive due process because it bears no reasonable relationship to any legitimate, nonpunitive governmental purpose." Pet. at 12. He alleges when ICE previously issued him an OOS, "it necessarily determined" that he was not a danger to the community or a flight risk and his removal was not significantly likely in the reasonably foreseeable future. *Id.* at 13. Petitioner alleges when ICE re-detained him, "ICE had not obtained travel documents for [him] and offered no individualized evidence suggesting that removal had become likely." *Id.* Finally, he alleges "Respondents cannot rely on generalized statistics or vague assertions about the possibility of repatriation to Vietnam" to establish his removal is not reasonably foreseeable. *Id.*

- **Count II: Violation of Procedural Due Process and ICE Regulations.** Petitioner alleges ICE violated his "procedural due process rights by revoking their [OOS] and re-detaining [him] without adequate notice, without a meaningful opportunity to be heard, and without complying with mandatory statutory and regulatory safeguards governing the deprivation of liberty." *Id.* at 14. He also alleges ICE violated its own regulations, 8 C.F.R. §§ 241.4 and 241.13, when re-detaining him without "a violation of release conditions or changed circumstances establishing that removal is reasonably foreseeable." Pet. at 14.

---

[6] Although Petitioner is now represented by counsel, he filed his Petition pro se, so the undersigned applies a liberal construction standard. *See, e.g.*, *Leslie v. Goldman Sachs Grp., Inc.*, No. 22-CV-03211, 2023 WL 6192717, at *1 (N.D. Ga. Mar. 17, 2023) (applying the liberal construction standard where "the operative complaint is a *pro se* one," even though "counsel subsequently entered a notice of appearance" (citation modified)); *Lucero v. CoreCivic NW N.M. Corr. Facility*, No. 19-cv-00363, 2020 WL 94798, at *1 (D.N.M. Jan. 8, 2020) (same); *Jackson v. Roche*, Nos. 04-CV-0133 & 02-CV-0111, 2008 WL 2579677, at *4 (N.D. Tex. June 27, 2008) (same). *But see Gooding v. Gonzales*, No. 10CV33, 2011 WL 841261, at *1 n.1 (W.D. Va. Mar. 7, 2011) (declining to apply a liberal construction standard where a plaintiff filed a pro se complaint, plaintiff's counsel later entered an appearance, and counsel "had the opportunity to review the pleadings on behalf of the Plaintiff and the opportunity to request permission to amend as necessary").

- **Count III: Violation of 8 U.S.C. § 1231 and the Fifth Amendment.** Petitioner alleges his post-final-order detention exceeds the six-month presumptively constitutional period recognized in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Pet. at 16. He further alleges his continued detention violates § 1231 and his due process rights because "Respondents cannot demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future." Pet. at 16.

- **Count IV: Violation of the Administrative Procedure Act ("APA").** Petitioner alleges Respondents violated the APA when they re-detained him "without (1) proof that an ICE official determined changed circumstances make [his] removal significantly likely in the foreseeable future; (2) adequate notice of the reasons for revocation of [his] release; and/or (3) an initial informal interview promptly after [his] return to custody to afford [him] an opportunity to respond to the reasons stated in the notification." *Id.* at 17.

- **Count V: Violation of the APA.** Petitioner alleges ICE's decision to revoke his OOS and re-detain him "was arbitrary and capricious because it ignored undisputed evidence that removal is not foreseeable, disregarded reasonable alternatives to detention, failed to account for Petitioner's settled reliance interest, and offered no rational explanation for reversing Petitioner's years of compliance." *Id.* at 19.

- **Count VI: Violation of the *Accardi* Doctrine**. Petitioner alleges ICE's revocation of his OOS "violates the *Accardi* doctrine because the agency failed to follow its own binding regulations, delegation requirements, and release instructions that expressly govern when and how supervision may be revoked." *Id.* at 21. Specifically, he alleges "ICE violated *Accardi* by disregarding mandatory regulations governing the findings required to revoke an order of supervision and the procedural protections owed to Petitioner and/or by failing to honor its reassurances to Petitioner guaranteeing [him] an opportunity to prepare for an orderly departure." *Id.*

Petitioner asks the Court to "order Respondents to immediately release [him] from custody under the terms of [his] prior Order of Supervision, without electronic monitoring." *Id.* at 22 (citation modified). He also seeks additional declaratory and injunctive relief, including enjoining "Respondents from re-detaining [him] without

individualized evidence of changed circumstances making [his] removal significantly likely in the reasonably foreseeable future." *Id.*

## III. Relevant Framework

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

Petitioner has a final order of removal, meaning that his detention is governed by 8 U.S.C. § 1231(a). Pet. at 2. Under this statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The 90-day period is known as the "removal period." *Id.* After the removal period, ICE has discretion to detain inadmissible or criminal aliens. *Id.* § 1231(a)(6).

Detention of an alien subject to a final order of removal may not be indefinite, and the Supreme Court set the "presumptively reasonable period of detention" under § 1231(a)(6) at six months. *Zadvydas*, 533 U.S. at 701; *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005) (reiterating "the reasonable period of post-removal detention is presumptively six months"). "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Therefore, to obtain habeas relief, a petitioner has the initial burden (1) to show his post-removal-order detention has surpassed six months or to rebut the presumption of reasonableness if such detention is less than six months, and (2) to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Id.*; *see also Soberanes*, 388 F.3d at 1311 ("If removal is not reasonably foreseeable, the court should hold continued detention unreasonable." (citation modified)). If the petitioner meets his initial burden, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

## IV. Analysis

### A. Petitioner's continued detention under § 1231(a)(6) violates his Fifth Amendment Due Process rights pursuant to *Zadvydas*.

#### 1. ICE is not entitled to a presumption of reasonableness.

At the outset, Respondents alleges Petitioner's detention is within the presumptively reasonable period. Resp. at 16-17. However, after Respondents filed their Response, the Tenth Circuit decided *Abedi v. Carter*, No. 25-3179, --- F.4th ----, 2026 WL 3149141 (10th Cir. Oct. 21, 2026). In *Abedi*, the Tenth Circuit recognized three possible approaches to calculate the *Zadvydas* six-month presumptively reasonable period of detention. These three approaches focus on:

> (1) only the time spent in the most recent period of detention (the 'latest detention' approach); (2) the time spent in the most recent period of detention plus any time previously spent in detention (the 'aggregated detention' approach); and (3) the time that has elapsed since the removal period was triggered.

*Id.* at *26 (citation modified). The Tenth Circuit held that "the third approach" "is most consistent with *Zadvydas*" and therefore "*Zadvydas*'s six-month presumption applies only

to the first six months that elapse after the removal period is triggered." *Id.* The expiration of the six-month presumptively reasonable period of detention "does not instantly and automatically invalidate any immigration detention that extends longer than six months or that begins more than six months after the removal period has become final. The government is simply no longer entitled to a presumption of reasonableness for any detention that occurs outside of the initial six-month period following the removal order becoming final." *Id.* at *28 (citations omitted).

Petitioner filed the instant Petition on September 10, 2026, more than 19 years after his order of removal became final in 2007. *See* Pet. at 2. As such, Petitioner has been detained beyond *Zadvydas*'s presumptively reasonable six months, and the Court "must conduct a case-specific analysis to conclude whether the detention meets the *Zadvydas* reasonableness standard absent this presumption." *Abedi*, 2026 WL 3149141, at *28.

**2. Petitioner has met his initial burden.**

Petitioner has met his initial burden under *Zadvydas* to show "there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. Notably, Petitioner is not required under *Zadvydas* to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable," *id.* at 702, only that that he has "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *id.* at 701. "To meet the burden of establishing this, Petitioner must demonstrate the existence of either institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. CIV-24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024) (R&R), *adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13,

2025); *see also Khaliq v. Noem*, 828 F. Supp. 3d 1260, 1268 (W.D. Okla. 2026) (confirming Judges in this District have "looked to whether the petitioner has demonstrated institutional barriers to repatriation or obstacles particular to his removal") (citation modified).

Here, Petitioner identifies several barriers and obstacles. In his Petition, he alleges ICE has not obtained travel documents for him and has "offered no individualized evidence suggesting that removal ha[s] become likely." Pet. at 13. He also alleges when ICE previously released him on an OOS "it necessarily determined that . . . Petitioner's removal was not significantly likely in the reasonably foreseeable future." *Id.* Petitioner also points to the "length of time [he] has been detained." *Id.*

Petitioner has sufficiently demonstrated barriers to his repatriation and obstacles to his removal. Since detaining Petitioner in July 2026, ICE has failed to make any meaningful progress to secure his removal. As Petitioner notes, "a new travel-document request in August 2026 . . . standing alone, does not reveal whether or when the destination country with authorize travel." Doc. 9 at 3. Nothing in the record indicates Vietnam has received Petitioner's travel document request or will approve such a request in the reasonably foreseeable future. *See* Doc. 8-1 at ¶ 21 (noting "a travel document request ("TDR") was submitted to ICE ERO Headquarters Removals and International Operations (HQ RIO) for submission to Vietnam"). Further, neither party has alleged any update from Vietnam on the status of the request since it was sent to ICE HQ RIO in August.

Thus, ERO's inability to remove Petitioner to Vietnam since 2007—and particularly since his re-detention in July 2026—along with the absence of record evidence to show

approved travel documents to Vietnam or any other third country demonstrate his removal is not significantly likely in the reasonably foreseeable future. *See Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *5 (W.D. Okla. Mar. 20, 2026) (finding a lack of response from the country of removal "reinforces that removal is not significantly likely in the reasonably foreseeable future"); *Khaliq*, 828 F. Supp. 3d at 1269 (finding petitioner showed good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future where efforts to remove him to his country of citizenship had been "sporadic" and there was no definitive response from that country); *Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3006045, at *1 (W.D. Okla. Oct. 27, 2025) (concluding petitioner "provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" when (1) the petitioner had "previously applied for travel documents from Iran" and was denied and (2) respondents had "not identified any countries with which any level of progress has been made toward obtaining the country's acceptance of Petitioner"); *see also Gomez v. Mattos*, No. 25-CV-00975, 2025 WL 3101994, at *5 (D. Nev. Nov. 6, 2025) (finding petitioner met his initial burden because he "has identified a barrier preventing him from being repatriated to [his home country], has demonstrated that he is not a citizen of any other country, and that ICE has not identified a third country that will accept him"); *Islam v. Kane*, No. CV-11-515, 2011 WL 4374226, at *3 (D. Ariz. Aug. 30, 2011) (R&R) ("Here, although the government has requested a travel document, there is no indication that such a document is forthcoming. Repeated statements from the Bangladesh Consulate that the travel document request is

pending does not provide any insight as to when, or if, that request will be fulfilled."), *adopted*, No. CV-11-0515, 2011 WL 4374205 (D. Ariz. Sep. 20, 2011).

Respondents allege Petitioner has not met his burden because he relies on ICE not obtaining travel documents to Vietnam to show that his removal is not significantly likely in the reasonably foreseeable future. Resp. at 18. Respondents assert that "while some countries certainly utilize [travel documents], not *all* do." *Id.* (emphasis in original). Respondents fail, however, to assert Vietnam does not require travel documents—an assertion that would be belied by the record where ERO Officer Soto's Declaration states that ERO has sent Petitioner's travel document request to ERO Headquarters to be sent to Vietnam. Doc. 8-1 at ¶ 24; *see also* Pet. at 2 (alleging he was previously released on an OOS because ICE could not obtain a travel document to Vietnam). Based on the record evidence, the undersigned is unpersuaded that a travel document is not needed for Petitioner's removal to Vietnam.

**3. Respondents have not met their burden.**

Having concluded Petitioner established "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Respondents, though, have not met their burden.

Respondents assert Petitioner's argument that he is not removable now because ICE could not previously remove him "is based on the speculative notion that ICE will not be able to obtain a travel document now, even in the face of a dramatic increase in removals to Vietnam following this administration's engagement at a high political level." Resp. at

18. Thus, Respondents assert, Petitioner has not established his removal is not significantly likely in the reasonably foreseeable future. *Id.* Respondents further allege ERO Officer Soto "believes Petitioner's removal is significantly likely in the reasonably foreseeable future" because (1) Petitioner's completed travel document request packet was submitted to ICE ERO Headquarters for submission to Vietnam; (2) Petitioner's travel document is pending; (3) "the Government of Vietnam is issuing travel documents unless an alien has been granted Withholding of Removal or Protection Under the Convention Against Torture from Vietnam and ERO cannot enforce the removal order to Vietnam." *Id.* at 20-21. In support, Respondents allege there were 699 removals in Fiscal Year 2025 and 1,198 removals in Fiscal Year 2026 to Vietnam. *Id.* at 21.

First, "evidence of what the [foreign] government has done in the past with respect to petitioner and with respect to other nationals sheds little light on how the [foreign] government will respond to the current situation." *Rajigah v. Conway*, 268 F. Supp. 2d 159, 167 (E.D.N.Y. 2003); *see also Khaliq*, 828 F. Supp. 3d at 1271 (finding respondents failed to meet their burden, in part, because "rebuttal evidence submitted by Respondents is scant" and "the record lacks any evidence to show that removal of aliens similarly situated to Petitioner . . . has been successful" (citation modified)). Accordingly, Respondents have "not provide[d] any conclusive evidence that petitioner will be removed in the near future." *Rajigah*, 268 F. Supp. 2d at 167. The undersigned finds notable the absence of evidence related to *Petitioner's* removal, considering his extensive criminal history over the past two decades.

Further, Respondents' assertions that the travel document is pending is not sufficient to demonstrate his removal is significantly likely. *See, e.g.*, *Bui*, 2026 WL 788947, at *5 (finding respondents failed to rebut petitioner's showing where they "failed to offer any indication Vietnam has responded" and "such prolonged silence reinforces that removal is not significantly likely in the reasonably foreseeable future"); *Johnson v. Young*, No. 12-cv-2339, 2013 WL 1571938, at *2 (W.D. La. Feb. 11, 2013) (finding the government failed to meet its burden by stating petitioner's native country had not yet refused to issue travel documents and the request was "pending") (R&R), *adopted*, 2013 WL 1571272 (W.D. La. Apr. 12, 2013). Respondents also fail to allege they have sent the TDR to Vietnam or followed up on the request to ERO Headquarters or Vietnam since August. *Accord Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) (holding that even with assertions from ICE that "it has followed up on its request for travel documents from India and done all it can" it is "not sufficient evidence to rebut petitioner's showing that he is unlikely to be removed in the reasonably foreseeable future").

Respondents provide no additional update or information about the status of the travel document request to Vietnam though Petitioner was re-detained more than three months ago. Notably, "the passage of time takes on more significance as inaction and/or lack of progress in effectuating removal is precisely what *Zadvydas* guards against." *Khaliq*, 828 F. Supp. 3d at 1271; *see also Douglas v. Baker*, No. 25-cv-2243, 2025 WL 2997585 at *3 (D. Md. Oct. 24, 2025) (finding the passage of time coupled with "the absence of any evidence in the record that the government has used that time to advance efforts to remove" the petitioner demonstrate that detention "no longer authorized under

§ 1231(a)(6) and *Zadvydas"*). This is particularly true where Respondents have been unable to remove Petitioner since 2007 and he has twice been released on an OOS based on that inability. *See* Pet. at 2. With such sporadic and sparse attempts at removal over the four months since Petitioner's re-detention, Respondents cannot rebut his showing that removal is not significantly likely in the reasonably foreseeable future.

Finally, even assuming Officer Soto's assertion that Vietnam is "issuing travel documents unless an alien has been granted Withholding of Removal or Protection Under the Convention Against Torture," Doc. 8-1 at ¶ 24, Respondents have not provided any evidence of when Vietnam might actually issue a travel document to Petitioner. "If [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, [a] Court certainly cannot conclude that his removal is likely to occur—or even that it *might* occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019) (citation modified). Thus, even if the Court were to conclude Respondents have shown Petitioner's removal is significantly likely, Respondents have not demonstrated that removal is significantly likely *in the reasonably foreseeable future*.

Accordingly, Respondents fail to meet their burden showing removal to Vietnam or any other country is likely in the reasonably foreseeable future. This conclusion is consistent with decisions recently finding the government did not show removal is likely in the reasonably foreseeable future when it presented no concrete evidence of likely removal to a petitioner's home country or any viable requests to a third country for removal. *See, e.g.*, *Khaliq*, 828 F. Supp. 3d at 1271 (granting of habeas relief by Chief Judge Palk after finding "prior efforts by ICE to remove" petitioner to his home country "have been

sporadic and unsuccessful," and "the record lacks any evidence to show that removal of aliens similarly situated to" petitioner back to his home country "has been successful," without any evidence of considerations for third country removal (citation modified)).

As such, the undersigned concludes Petitioner is entitled under *Zadvydas* to habeas relief and immediate release from custody, subject to an appropriate OOS. *See* 28 U.S.C. § 2241(c)(3); *Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated." (citation modified)).

### B. The Court should decline to address Petitioner's remaining claims.

Petitioner also alleges the revocation of his OOS in violation of ICE's own regulations violates his due process, the APA, and the *Accardi* doctrine. Pet. at 13-21. If the Court concludes Petitioner is entitled to immediate habeas relief under *Zadvydas*, the Court need not consider his claims alleging improper revocation of his release on an OOS. *See Momennia*, 2025 WL 3006045, at *1 n.1 (declining to address a Magistrate Judge's "alternative conclusion" about ICE's violation of its own regulations after finding petitioner was entitled to habeas relief under *Zadvydas*). That is particularly true here, as Petitioner was re-detained based on his failure to check-in with ICE as required by his OOS and he acknowledges his "noncompliance," Doc. 9 at 2.

## V. <u>Recommendation and Notice of Right to Object</u>

For the foregoing reasons, the undersigned recommends that the Court **GRANT** the Petition, Doc. 1, for habeas relief under 28 U.S.C. § 2241 for Petitioner's release from ICE custody. The undersigned recommends the Court order Respondents to release Petitioner

from custody immediately, subject to an appropriate Order of Supervision. The undersigned further recommends the Court order Respondents to certify compliance by filing a status report within five business days of the Court's order. Further, the Court should **DENY as moot** Petitioner's Motion to Appoint Counsel, Doc. 2, because Petitioner obtained counsel who has now made an appearance on his behalf, Doc. 10.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **December 4, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **December 9, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 25th day of November, 2026.

Chris M. Stephens
______________________________
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE